# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION

### SPECIAL EDUCATION DUE PROCESS HEARING

### CONFIDENTIAL

### HEARING OFFICER'S DETERMINATION

**STUDENT:** Tiara Tyler  **DATE OF BIRTH:** 10/5/96

**ADDRESS:** 925 K Street, N.E.
Washington, D.C.

**PRESENT SCHOOL ATTENDING:** Payne E.S.
**HOME SCHOOL:** Payne E.S.

**DATE OF HEARING:** October 31, 2005

**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| Phaedra Smith* | Special Education Coordinator |
| Norma Gales | Mother |

(* Testified by telephone)

**Student's Representative:** Fatmata Barrie, Esq.
Address: 1003 K Street, N.W.
Washington, D.C. 20001
FAX: 202-626-0048

**School System's Representative:** Aaron Price, Esq.
Address: 825 N. Capitol Street, N.E., Washington, D.C. 20002

## INTRODUCTION:

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on October 31, 2005, at the request of Fatmata Barrie, counsel for the parent and the student. Aaron Price represented DCPS, the other party to this hearing.

## JURISDICTION:

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq.; and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446) and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

## ISSUE:

1. Did DCPS fail to provide an appropriate placement for the student for the 2005-2006 School Year so as to deny her a Free Appropriate Public Education (FAPE)?

## DOCUMENTS SUBMITTED BY DCPS:

DCPS-1-DCPS-3

## DOCUMENTS SUBMITTED BY STUDENT:

TT-1-TT-18

## FINDINGS OF FACT:

1. The student is a nine-year-old female who has been found eligible for special education services by DCPS as a student with the disability classification of Emotionally Disturbed. (TT-19)

2. On August 2nd 2005, DCPS convened an MDT meeting at Payne Elementary School and developed an IEP that called for 100 % of the time not in a general education setting. The IEP required 32 hours a week of specialized instruction and related services. The IEP stated under placement considerations that out of general education classroom was accepted as the placement. The IEP stated at IX: "Student requires

2

behavior interventions and modifications that cannot be met within the general education classroom." (TT-19)

3. The MDT Meeting Notes state under recommendations: "The MDT stated that the student's need could be addressed in a full-time program. The parent states that the student's behavior has not improved and she suggested that she need a full-time placement that has crisis intervention and psychologist and staff on site. The MDT stated that they would agree to this placement to address her needs." The MDT/IEP Meeting Notes also state on placement discussion: "After review of the documentation, the student's needs can be addressed in a full-time therapeutic center. The IEP will be forwarded to the Site Review Consideration Team for identification of placement. DCPS will come back to the table to discuss placement. The parent and advocate recommended Accotink Academy and Kennedy Institute as possible placements. DCPS placement and these schools will be discussed at the placement meeting. The MDT recommended a full time out of general education placement because parent and advocate do not feel that Tiara has made adequate progress at Payne Elementary over the past 2 years that she has been there. The MDT with the exception of the parent and advocate, feel that Tiara's behavior and emotional needs can continue to be met at Payne Elementary. The MDT recommended another placement since Ms. Gales does not feel Tiara has made progress. In addition a full time center will give her the opportunity to use some of the skills that she has worked on at Payne in a smaller more therapeutic setting and develop additional skills to improve both her behavior and academic performance." (TT-19) The Mother testified she agreed that the student needs a full-time placement.

4. After the August 2nd MDT meeting, the special education coordinator sent the IEP and evaluations to the DCPS Site Review Committee. The Site Review Committee responded to the special education coordinator with two alternative full-time placements for students with emotional disturbance- Taft Center and Hamilton Center. (Testimony of Ms. Smith)

5. On August 25th 2005, the MDT team reconvened to discuss and determine placement for the student. At the MDT meeting, the special education coordinator, school psychologist, speech therapist, social worker, special education teacher and parent and her advocate participated. The special education coordinator offered both Hamilton Center and Taft Center as full-time therapeutic placements for students with emotional disturbance. The special education coordinator gave the parent both the phone numbers and addresses of the two sites for the parent to visit the programs. The special education coordinator provided information on the two programs that she received from the Site Review Committee on their staffing and program. The parent stated she wanted her child to go to Accotink

3

Academy. (Testimony of Ms. Smith) The student had been accepted at that program. (TT-17)

6. The parent told Ms. Smith that she was not going to visit either of the DCPS proposed sites and that her child was not going to those programs. The parent never contacted her of which of the two sites she wanted, so the special education coordinator, who had prepared Prior Notices of Placement (PNOP) for each site, sent a PNOP to Hamilton Center since it was the closest school to the student's home. (Testimony of Ms. Smith) The mother testified that she opposed both Hamilton and Taft Centers and did not visit the sites. The parent was seeking placement for her child at Accotink Academy, High Road School or Kennedy Institute. (Testimony of Mother)

7. Counsel for DCPS stipulated that Accotink Academy offers a program that is reasonably calculated to provide educational benefits.

8. The parent has enrolled her daughter at Washington Academy Public Charter School beginning September 8th 2005. The student is currently attending Washington Academy P.C.S. (Testimony of Mother)

**DISCUSSION AND CONCLUSIONS OF LAW:**

Counsel for the parent argues that the DCPS Site Review Committee decided on the placement for the student and not the MDT team in violation of IDEA. She also argues that the parent was not given an opportunity to participate in a placement meeting since the Site Review Committee had made that decision. Counsel for DCPS argues that the parent participated in the MDT/IEP meeting of August 2nd 2005 and agreed with the IEP calling for a full-time therapeutic program for students with emotional disturbance. Counsel for DCPS further maintains that at the August 25th 2005 MDT/Placement meeting, the parent participated with her advocate along with the school psychologist, special education teacher, speech therapist, social worker and special education coordinator all who were knowledgeable of the student. Counsel argues that the parent was presented two DCPS full time therapeutic programs that could implement the student's IEP. The parent was invited to visit both programs, but she did not and instead opposed both DCPS programs. The parent wanted her child to go to the private Accotink Academy where she had been accepted.

This hearing officer finds the arguments of counsel for DCPS persuasive. The U.S. Court of Appeals for the District of Columbia has held in *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991) that if a public school placement is appropriate, a school district need not consider a private placement, "even though a private school might be more appropriate or better able to serve the child." Cited with approval in *Schoenbach v. District of Columbia*, 309 F. Supp.2d 71 (D.D.C. 2004) At the August 2nd MDT/IEP meeting, the parent and her advocate convinced the MDT team that her daughter needed a full-time therapeutic program for students with emotional disturbance. The IEP

4

developed with the parent's agreement called for a full-time out of general education placement. (See Findings of Fact #3) The Site Review Committee after reviewing the IEP and materials sent by the special education coordinator provided her with information on two DCPS full-time therapeutic programs as placement options- Taft Center and Hamilton Center- to be discussed by the MDT team on August 25th 2005. The parent and her advocate participated in the MDT/Placement meeting with the required MDT members who were knowledgeable of the child. DCPS complied with 34 C.F.R. Section 300.552 (a) (1) stating that "a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of evaluation data, and the placement options" make placement decisions. The special education coordinator offered the parent an opportunity to visit both DCPS programs, but she refused. The parent had received an acceptance letter to the private placement of Accotink Academy prior to the MDT placement meeting and expressed at the August 25th MDT/Placement meeting that she wanted her daughter to go to Accotink. It is the conclusion of this hearing officer that DCPS complied with IDEA and did not deny a FAPE to the student.

It is hereby **ORDERED** that:

**Counsel for the parent's request for relief is DENIED and the case is DISMISSED.**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

/s/ Seymour DuBow, Esq.
Impartial Hearing Officer

Date Issued: 11/7/05

Date filed: November 4, 2005

5