**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| T.T., *et al* | * |
| Plaintiff | * |
|   | * |
| v. | * Case Number: 06-207(JDB) |
|   | * |
| DISTRICT OF COLUMBIA, *et al* | * |
| Defendant(s) | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiffs, T.T. and Norma E. Gales (hereinafter referred to as Plaintiffs), by and through their attorneys Jude C. Iweanoge and THE IWEANOGES' FIRM, PC hereby moves this Honorable Court for summary judgment in favor of the Plaintiffs as to all counts. As reasons therefore, Plaintiffs will establish that there exist no triable issues of material fact and that Plaintiffs are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, Plaintiffs, incorporate by reference the attached Memorandum of Points and Authorities.

WHEREFORE, Plaintiffs pray this Honorable Court to grant this Motion and enter summary judgment in favor of Plaintiffs as to all counts of the complaint.

Respectfully submitted,
THE IWEANOGES' FIRM, PC

By:   */s/JudeIweanoge/s/*
      Jude C. Iweanoge, Bar #493241
      1010 Vermont Avenue, NW, Suite 600
      Washington, D.C. 20005
      Phone: (202) 347-7026
      Fax: (202) 347-7108
      Email: jci@iweanogesfirm.com

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| T.T., *et al* | * |
|           Plaintiff | * |
|  | * |
|     v. | *   Case Number: 06-207(JDB) |
|  | * |
| DISTRICT OF COLUMBIA, *et al* | * |
|           Defendant(s) | * |

*************************************************

## MEMORANDA OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

For reasons set forth herein, Plaintiffs are entitled to summary judgment as to all counts. The undisputed material facts of this case will establish, inter alia, that (i) the parent did not meaningfully participate in the placement of T.T. at Hamilton Center; (ii) MDT did not make the placement decision but outsourced the placement decision to DCPS Site Review Committee, (iii) MDT did not provide T.T.'s parent with reasons for rejecting her proposed placement at Accotink and/or Kennedy Institute; (iv) at the MDT and Placement meeting the parent's choice of placement was not considered and the PNOP did not provide reasons for rejecting the parent's choice of placement.; and (v) T.T.'s placement is inappropriate and the hearing examiner failed to independently review the record before rendering a verdict in favor of the Defendants.

On these controlling points, there exist no genuine issue of material facts and accordingly, Plaintiffs are entitled to summary judgment as a matter of law.

## BACKGROUND FACTS

T.T. is a nine (9) year old child with disability in the custody of his mother, Norma E. Gales in the District of Columbia, and is eligible for services pursuant to IDEA and Section 504. T.T. is an emotionally disturbed child who was receiving special

2

education and related services at Payne Elementary School since 2003 and spends 100% of her time out-of-general education.

On August 2, 2005, DCPS convened an MDT meeting at which the team recommended a full time therapeutic center with on-site crisis intervention and a psychologist for T.T. because her condition had not improved while at Payne Elementary School. Thereafter, during the meeting, Norma Gales advised the MDT Team that her choices of schools for T.T. are Accotink Academy and Kennedy Institute as possible placement. Plaintiff was advised that the MDT meeting would reconvene to discuss and determine place.

The Special Education Coordinator sent the IEP and evaluations to DCPS Site Review Committee. The Site Review Committee provided the Special Education Coordinator with Taft Center and Hamilton Center as alternative placements for T.T. On August 25, 2005, the MDT team reconvened to discuss and determine placement for T.T. At the meeting, the Special Education Coordinator advised Plaintiffs that T.T. would only be placed in Taft Center and Hamilton Center because DCPS Site Review Committee has directed that T.T. be placed in one the stated schools. The MDT meeting did not discuss Plaintiff's choice of schools and the reason for the rejection of the suggested school. The Special Education Coordinator issued a PNOP for T.T. to be placed in Hamilton Center. The PNOP issued by MDT did not describe other options considered and reasons for rejection of each option.

**UNDISPUTED FACTS**

1. MDT did not make the decision on the placement of T.T. because it was outsourced to DCPS Site Review Committee. (Adm. Rec. 317).

3

2. The MDT team does not place children outside the schools recommended by Site Review Committee, thus the MDT meeting was limited in their consideration of a wide range of schools available for placement.

3. The Special Education Coordinator did not provide DCPS Site Review Committee Plaintiffs' choice of school placement at Accotink and/or Kennedy Institute, thus they were not considered by the Site Review Committee, as required by law.

4. The Notice of Prior Notice does not contain description of other placement options considered and reasons for rejection of each option.

5. The MDT placement meeting was held to rubber stamp the decision of the Site Review Committee because the MDT could not deviate from the decision of the Site Review Committee with respect to placement.

6. The notes from the MDT meeting held on August 25, 2005 states that DCPS offered Plaintiffs placement at Hamilton Center or Taft Center based on the determination of the DCPS Site Review Committee that T.T would only be placed in either of the two schools. (Adm. Rec. Bate 70). The parent and advocate advised that they have not had an opportunity to visit the programs at the placements offered and that parent was not contacted or asked to participate in the discussion about placement with the Site Review Committee. (Adm. Rec. bates 70-71).

7. DCPS stipulated during the due process hearing on October 31, 2005 that Accotink Academy offers a program that is reasonably calculated to provide educational benefits to T.T.

8. The meeting of August 25, 2005 was convened for making a final decision on placement but no placement decision was reached because more than one PNOP was issued to T.T. (Adm. Rec. bates 320-21, 325). No other meeting of the MDT was

4

convened before the Special Education Coordinator placed T.T. at Hamilton Center. (Adm. Rec. 322).

## FACTS IN DISPUTE

1. The hearing examiners finding of fact that parent participated in the MDT meeting is inconsistent with the testimony and notes from the meeting. The parent and advocate did not meaningfully participate in the placement meeting held on August 25, 2005 because they were advised that she should chose between Taft Center and Hamilton Center. (Adm. Rec. Bates 324).

## ARGUMENT
## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered for the moving party when there is no genuine issue of material fact. In ruling on a motion for summary judgment, the trial court addresses two issues: (1) whether the pleading, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and (2) whether the movant is entitled to judgment as a matter of law. In addition, inferences to be drawn from underlying facts must be viewed in the light most favorable to the opposing party, and even if it is unlikely that the opposing party will not prevail at trial. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

In decision interpreting Rule 56, the United States Supreme Court has disapproved any continued reluctance by trial courts to grant summary judgment in appropriate cases stating:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [rules of

5

procedure] which are designed "to secure the just, speedy, and inexpensive determination of every action."

*Celotex Corp. v. Cartarett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986)(citations omitted)

The IDEA provides for judicial review in state and federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. See 20 U.S.C. §1415(i)(2)(A). 20 U.S.C. §1415(e)(2) states that "the court shall review the records of the administrative proceedings, shall hear additional evidence at the request of the party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." District Court's review of a challenge to an administrative ruling brought under the Individuals with Disability Education Act (IDEA) base its decision on "preponderance of the evidence" in exercising its independent judgment at arriving at an appropriate placement and programming decision. 20 U.S.C. §1415(i)(2)(B); *See Lenn v. Portland School Committee*, 998 F.2d 1083 (1st Cir. 1993).

The district court reviewing an HOD should "defer to the hearing officer's factual findings based on credibility judgment unless the non-testimonial, extrinsic evidence on the record would justify a contrary conclusion." *S.H. v. State-Operated School Dist. Of the City of Newark*, 336 F.3d 260, 269-71 (3rd Cir. 2003) (citations omitted).

**A.   THE COURT SHOULD REVERSE THE DETERMINATION BY THE HEARING OFFICER THAT T.T.'s PLACEMENT WAS APPROPRIATE**

The Individuals with Disabilities Education Act ("IDEA") anticipates significant parental involvement in the education of a child with a disability. Specifically, 20 U.S.C. § 1415 establishes detailed procedural safeguards to parents that guarantees their right

6

to adequate notice of any agency action, as well as the opportunity to examine all relevant records regarding educational placement amongst other things. A parent is entitled to adequate written notice and a reasonable time before a school agency may either propose to initiate a placement or refuse to initiate a placement. 34 C.F.R. § 300.503. The written notice must also include a description of the action proposed or refused by the school agency or an explanation of why it has proposed or refused to take an action. Id.

According to 20 U.S.C. §1414(f), "each local educational agency or state educational agency shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child. In addition, 34 C.F.R. 300.552(a)(1) states that "in determining the educational placement of a child with a disability, . . . each public agency shall ensure that the placement decision is made by a group of persons, including the parents . . . the meaning of the evaluation date, and the placement options." Clearly, the MDT did not make the placement decision in this case nor was the decision made in consultation with members of the MDT and the parent of T.T.

In the case *sub judice*, DCPS delegated the duty of the MDT to the Site review Committee. The processes by which special education students are placed in schools in the District of Columbia inhibit meaningful participation by the parents. *See Briere v. Fair Haven Grade Sch. Dist.*, 948 F. Supp. 1242, 1253-54 (1996)(Finding that the team's refusal to discuss options and to consider the parent's choice of placement "inhibited meaningful parental involvement and contravened the letter and the spirit of the statute"  and ". . .constituted a flagrant refusal to consider an involved and

knowledgeable parent's placement proposal."). In this case, the Special Education Coordinator testifying about the parent's participation in the placement decision states:

> Basically the process we just explained to Mom, once again, in terms of the facts, that all of the documentation was just sent there[1], and that when we came to the table, that's where Mom – she was a part of the placement discussion, when we sat. We had the meeting and we offered – we gave information on the program at Hamilton Center and Taft Center. We provided addresses and phone numbers. So, therefore, Mom was part of placement discussion.

(Adm. Rec. 324). Clearly, the members of the MDT, which included the Special Education Coordinator believe that once the parent was present at the meeting and the parent was given information of the school that have been pre-determined by the Site Review Committee, the parent has participated in the placement process. Plaintiffs submit that the MDT meeting did not have any meaningful discussion on T.T.'s placement or on how each school would meet the educational needs of T.T.

Furthermore, the failure to follow the IDEA procedures hinders the right of the parents to participate in the placement of their child. In the instant case, DCPS did not follow the procedures enumerated in IDEA because it did not convene a placement meeting that provided the parent an opportunity to meaningfully participate. Based on the testimony of the Special Education Coordinator and the entire record, Norma Gales was required to either choose one of the schools or leave it, despite the fact that Norma Gales attempted to have the team discuss the schools she recommended. Moreover, since there is nothing in the record to suggest that Norma Gales' placement choices were considered, and since no follow-up MDT placement meeting occurred to discuss all the placement options, including Accotink and Kennedy Center and conclude on T.T.'s

---

[1] Meaning "Site Review Committee"

placement, it is apparent that the Site Review Committee stripped the MDT of its ability to fully comply with IDEA. In addition, the Special Education Coordinator testified that she forwarded T.T.'s current IEP and all of the current documentation to the Site Review Committee which subsequently responded with two placements to Hamilton and Taft. However, the IDEA requires that the MDT not the Site Review Committee make a determination regarding the student's placement. *See Holland, et al v. District of Columbia*, 71 F.3d 417 (D.C. Cir. 1995).

The deprivation of Norma Gales' procedural rights in participating in T.T.'s placement decision amounts to a denial of a Free Appropriate Public Education (FAPE). In *Tice v. Botetourt County School Board*, 908 F.2d 1200, 1203, the court stated that providing funding to state educational agencies "is conditioned on a state's compliance with extensive procedural requirement . . ." In *Tice* the court stated "as we have repeatedly held, 'failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that a school failed to provide . . . FAPE.'" Id. at 1206(quoting *Hall v. Vance County Bd. of Educ.*, 774- F.2d 629, 635 (4th Cir. 1985)); *See also Board of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988).

The issue in both *Hall* and *Dienelt* was that the educational agency did not adhere to the procedural guidelines to have the parents involved in the formulation of their child's IEP. id. at 1207  In this case, DCPS failed to adhere to the procedural rules when it failed to involve the parents in the decision making of T.T.'s' placement.  In addition, in *Hudson v. Wilson*, 828 F.2d 1059, 1063 (4th Cir. 1987) the court stated that 'procedural noncompliance can by itself support a finding that a child has not been provided with FAPE.'  Therefore, DCPS' action depriving T.T.'s parent meaningful participation in the placement decision amounts to a denial of FAPE.

9

T.T.'s placement at Hamilton is inappropriate. A placement is appropriate if (1) the LEA has complied with IDEA's administrative procedures and (2) the IEP generated by MDT was reasonably calculated to provide educational benefit. *Schoenbach v. District of Columbia*, Case No.: 02-02034 (D.D.C. May 25, 2004). In this case, the placement is in appropriate because DCPS made placement decision unilaterally, did not consider the parent's proposed placement and gave no reason for declining the parent's proposed placements.

34 C.F.R. 300.503(b) provides that DCPS is required to give written explanation if it declines a parent placement proposal. Moreover, a parent is entitled to a description of each procedure an agency uses as a basis for the proposal or refusal and a description of any other factors that are relevant to any agency's proposal or refusal. 34 C.F.R. § 300.503(b). The PNOP issued on August 25, 2005 provides no such explanation. Therefore, DCPS's violation of administrative procedure rendered its placement at Hamilton Center inappropriate.

The Hearing Examiner's decision focuses solely on the fact that the parent was present at the meeting without recognizing that the intent of the statute is for the parent to meaningfully participate in the placement process and not just to be present when the information would be provided to the parent.

## **CONCLUSION**

WHEREFORE, the Plaintiffs respectfully request this Honorable Court to grant their motion for summary judgment and reverse the decision of the Hearing Officer. In addition, the court should grant the Plaintiffs' request for attorneys' fees and costs for this action and the administrative proceedings.

        Respectfully submitted,
        THE IWEANOGES' FIRM, PC


By:   /s/JudeIweanoge/s/
        Jude C. Iweanoge, Bar #493241
        1010 Vermont Avenue, NW, Suite 600
        Washington, D.C. 20005
        Phone: (202) 347-7026
        Fax: (202) 347-7108
        Email: jci@iweanogesfirm.com


## **CERTIFICATE OF SERVICE**

    I HEREBY certify that copies of the foregoing motion were electronically filed on October 20, 2006, and the court would notify parties using Court's e-file system.


          /s/JudeIweanoge/s/
          Jude C. Iweanoge