UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| T. T. | |
| (a minor) by her mother ) | |
| and next friend | |
| Norma E. Gales ) | |
| | |
| Plaintiffs, ) | |
| | |
| v. ) | Civil Action No. 06-207 (JDB) |
| | |
| DISTRICT OF COLUMBIA *et al.* ) | |
| | |
| Defendants. ) | |
| _____ | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**

Come now defendants District of Columbia and Clifford Janey, by and through

counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rules

7.1(h) and 56.1, and hereby respectfully move this honorable Court to grant summary

judgment in their favor in the captioned action and to deny the plaintiffs' motion for

summary judgment. As established by the accompanying supporting memorandum,

plaintiffs have failed to attach an appropriate statement of material facts as to which there

is no genuine dispute to their motion, and the challenged administrative determinations

under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"),

20 U.S.C. §1400 *et seq*. were entirely appropriate.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General
for the District of Columbia

GEORGE  C. VALENTINE
Deputy Attorney General
Civil Litigation Division


/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Assistant Attorney General
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
E-mail – maria.merkowitz@dc.gov

November 9, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
T. T.                           )
(a minor) by her mother         )
and next friend                 )
Norma E. Gales                  )
                                )
          Plaintiffs,           )
                                )
          v.                    )    Civil Action No. 06-207 (JDB)
                                )
DISTRICT OF COLUMBIA *et al*.   )
                                )
          Defendants.           )
_____


### DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT


### INTRODUCTION

This action seeks review of an administrative decision by a Hearing Officer ("HO"), issued on November 7, 2005, following a hearing conducted pursuant to the Individuals With Disabilities Improvement Education Act, 20 U.S.C. § 1400 *et seq*. ("IDEIA"), on October 31, 2005.[1]  The issue presented to the HO was whether DCPS provided an appropriate placement for the student for the 2005-2006 school year, such that she was provided a free appropriate public education.  ("FAPE")  The HO concluded that the placement proposed by DCPS was appropriate and that there was no denial of FAPE.  Plaintiffs appeal from that decision.

---

[1] Plaintiffs filed an almost identical Complaint on November 21, 2005, appealing a Hearing Officer's Decision issued on August 16, 2005. *See Gales v. District of Columbia,* Civ. No. 05-2259 (D.D.C.).  That case is currently pending before Judge Rosemary M. Collyer.

## FACTUAL BACKGROUND

The minor plaintiff is a ten-year old student who has been found eligible for special education services as a student with the disability classification of Emotionally Disturbed.   On August 2, 2005, DCPS convened a multidisciplinary team ("MDT") meeting, which consisted of the parent, a speech pathologist, school psychologist, general education teacher, IEP developer, an LEA/special coordinator, a social worker and the student's educational advocate.  (AR at 263).  On that date the team developed an individualized educational plan ("IEP") for the student that called for 100% of the time not in a general education setting, and which required 32 hours a week of specialized instruction and related services.  (AR at 248, 262) The parent, who was present at the meeting, suggested that the student needed a full-time placement that has crisis intervention and a psychologist and staff on site.  (AR at 268)  The MDT/IEP team agreed to this type of placement.  (AR at 268)

The team subsequently forwarded the student's IEP to the Site Review Committee[2] for identification of an available placement that would meet the student's educational needs as set forth in her IEP.  (AR at 70)    The Site Review Committee responded to the special education coordinator, naming two alternative available full-time placements for students with emotional disturbance—Taft Center and Hamilton Center. (AR at 70)

On August 25, 2005, the MDT team, comprised of the parent, her advocate, the special education coordinator, a school psychologist, speech therapist, social worker and special education teacher, reconvened to discuss and determine placement for the student.

---

[2] The Site Review Committee is an internal office within the Office of Special Education that tracks programs and available spaces in those programs.

(AR at 69)  The special education coordinator offered the parent both the Hamilton

Center and the Taft Center as full time therapeutic placements for students with an

emotional disturbance.   The special education coordinator also provided the parent with

information on the two programs and gave the parent the phone number and address of

each proposed placement so that the parent could visit both and determine which of the

two she would prefer.  (AR at 307-309)

However, the parent only wanted the student to attend Accotink Academy, a

private school, where the student had already been accepted.  (AR at 314)  The parent

informed Ms. Smith, the special education coordinator, that she was not going to visit

either of the two DCPS proposed sites and that her child was not going to attend either

program. (AR at 309, 314, 318)  The parent did not contact the special education

coordinator with a preference for either of the public placements.  Consequently the

special education coordinator sent a Prior Notice of Placement ("PNOP") to Hamilton

Center since it was the closer of the two public schools to the student's home.[3]  (AR at

319)

At the hearing, and in their motion, plaintiffs claim that the DCPS Site Review

Committee determined the placement for the student and not the MDT team, in violation

of the IDEIA.  (Pls' Mot. at 2)  Plaintiffs also argue that the parent was not given an

opportunity to meaningfully participate in the student's placement.  (*Id.* at 2)

---

[3] The student began attending the Washington Academy Public Charter School on September 8, 2005, and
was still attending that school at the time of the hearing.  (AR at 5)

## ARGUMENT

### I.    The criteria for granting summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." Farmland Industries, Inc. v. Grain Board of Iraq, 248 U.S. App. D.C.  276, 904 F. 2d 732, 735 (1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[4]

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[5]

---

[4] Anderson v. Liberty Lobby, Inc, supra, 477 U.S. at 248, similarly describes the rule for determining materiality:

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinning of those disputes.

[5] Celotex Corp. v. Cantrett, supra, is one of three cases decided by the U.S. Supreme Court in 1986 that govern the standard for granting motions for summary judgment. Celotex Corp., supra;  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Company v. Zenith Radio Corporation, 475 U.S. 574 (1986). Celotex Corp. held that Rule 56 was to be administered with due regard to those opposing claims, as well as those advancing them, and that the purpose of the Rule was to dispose of claims that had no reasonable factual basis. 477 U.S. at 327, 323. Anderson held that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. 477 U.S. at 248, 254.  Matsushita held that where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." 475 U.S. at 587.

> . . . [T]aken together, these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials and lower courts have responded accordingly.

10 A. Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2727, n. 25 (1998).

To meet the initial burden of showing "the absence of a genuine issue of material fact" on an essential element of the non-movant's case, the movant may demonstrate that the respondent has no evidence to support an essential element of his or her case.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  In answer, the respondent must "present affirmative evidence" in order to defeat the motion, and "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion for summary judgment should be granted.  Id.

## II.  The criteria for review of administrative decisions under IDEA

IDEA provides for judicial review in state or federal court to "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(c).  In conducting such review, the reviewing court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e).  However, the "preponderance of the evidence" standard "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Board of Education of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The party challenging the hearing officer's determination bears the burden of persuading the court that the Hearing Officer was incorrect.  Angevine v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992); Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, the Court "must also give 'due weight' to the

administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." <u>Lyons v. Smith</u>, *supra*, 829 F.Supp. at 418.

Accordingly, before this Court may reverse the Hearing Officer's decision, the Plaintiffs must show by a "preponderance of the evidence," giving the Hearing Officer's finding "due weight," that the Hearing Officer was wrong.

### A. <u>Plaintiffs have failed to comply with the requirements of Local Rules 7.1(h) and 56.1.</u>

Local Rules 7.1(h) and 56.1 are "clear and explicit." <u>Washington Bancorporation v. Said</u>, 812 F. Supp. 1256, 1278 (D.D.C. 1993). They require that a party moving for summary judgment must submit a Statement of Material Facts as to which there is No Genuine Dispute and to **support these facts with citations to the record**. <u>See</u> LCvR 7.1(h) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, <u>which shall include references to the parts of the record relied on to support the statement.</u>") (Emphasis added); LCvR 56.1 (same).

Here, plaintiffs have attached a statement of Undisputed Facts containing eight paragraphs. Only three of those paragraphs (Par. 1, 6 and 8) contain any reference to the administrative record. Accordingly, this Court should refuse to credit any of the facts that plaintiffs claim are not in dispute which do not reference the administrative record. "The importance of filing a proper…statement is well established." *Jackson v. Finnegan, Henderson, Farabow, Garrett, & Dunner*, 101 F.3d 145, 151 (D.C. 1996) (citations omitted). It is meant to "assist[] the district court to maintain docket control and to decide motions for summary judgment sufficiently and effectively," *Id*. at 150, and to

prevent it from having to "sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact," *Id.* at 151 (citations omitted).

It is the parties' responsibility and that of their counsel "to crystallize for the district court the material facts <u>and the relevant portions of the record</u>." *Id.* (emphasis added). Here, plaintiffs have not done so. Accordingly, the Court should strike, or give no credence to those "undisputed facts" which are not based on the record.

**B. <u>The Hearing Officer correctly determined that DCPS provided an appropriate placement for the student and did not deny her a FAPE.</u>**

**1. <u>The parent was provided the opportunity to participate in the placement decision of her child.</u>**

Plaintiffs here assert that the student was denied a FAPE because the parent was not given ample opportunity to participate in the placement process as mandated by the IDEIA. Plaintiffs base their assertion on the fact that after the MDT/IEP meeting was held on behalf of the student, the special education coordinator forwarded the student's IEP and current evaluations to the Site Review Committee. (Pls' Mot. at 3) What plaintiffs do not state is that this was done only for the purpose of determining where there was a vacancy in a school that could meet the student's educational needs as set forth in her IEP. Because the private placement the parent sought was not chosen, the parent claims she was denied the opportunity to participate in the placement process and that the Site Review Committee, not the MDT team, made the placement decision.

34 C.F.R. 300.552 provides, *inter alia,* that:

> [i]n determining the educational placement of a child with a disability…
> (a) The placement decision-

(1) Is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; and

(2)…

(b) The child's placement-…

(2) Is based on the child's IEP; and

(3) Is as close a possible to the child's home….

In the instant case, an MDT/IEP meeting was conducted on August 2, 2005 "to discuss [the student's] disability and placement." (AR at 248, 271)    In attendance were the parent, the student's educational advocate, a speech pathologist, school psychologist, general education teacher, IEP developer/special education, a special education coordinator and a social worker/case manager. (AR at 263)  At the meeting the team reviewed speech therapy, psychologist and social worker reports concerning the student and drafted an IEP with which the parent and advocated concurred. "Based upon the documents reviewed, the MDT has determined that the student qualifies for special education services under IDEA as an Emotionally Disabled student. **The parent agreed** and the MDT moved to conduct an IEP meeting for the student." (AR at 268; Emphasis added)

"The MDT recommended a full time out of General Education placement because **parent and advocate** do not feel that [the student] has made adequate progress at Payne Elementary over the past 2 years that she has been here. **The MDT, with the exception of the parent and advocate**, feel that [the student's] behavior and emotional needs can continue to be met at Payne Elementary. **The MDT recommended another placement since Ms. Gales** [the parent] **does not feel [the student] has made progress.** (AR at 270; Emphasis added)  At the end of the meeting all parties agreed on the terms and

services of the IEP and that the student's needs could be addressed at a full time therapeutic center.  (AR at 32, 264, 268, 269)

The only remaining issue was the location of the services.  (AR at 32) Accordingly, the IEP and the student's current evaluations were forwarded to the Site Review Committee to determine "the location that would meet the student's needs and the site which was closest to her home."  (AR at 70, 307)   Contrary to plaintiffs' assertions that the Site Review Committee made the determination as to the student's placement, it only provided the names of possible locations which would fulfill the requirements of the IEP.  The Site Review Committee does not make placement decisions.  Its role is to determine a location that fits the criteria outlined in the IEP.  (AR at 327, 321)  Once the Site Review Committee identifies potential locations those are then discussed by the MDT team.  (AR at 327)

In the instant case, the Site Review Committee identified two locations, the Hamilton Center, located at 1401 Brentwood Parkway, N.E., and the Taft Center, located at 1800 Perry Street, N.E. [6]  These locations were considered by DCPS personnel and found to be appropriate placements that could meet the child's educational needs.  (AR at 70, 306, 312)  "They both have full time social workers and a psychologist on staff to provide counseling and crisis intervention.  In addition, both schools offer small settings."  (AR at 70)  The parent was informed that both schools could meet the student's needs.  "She was given a little information about the program in terms of that they had full-time social workers and psychologists on staff to provide the counseling, that the school had a small setting, and that there were, in fact, no more than nine students to a class with a certified special education teacher and an aide."  (AR at 312)

---

[6] The parent resides at 925 K Street, N.E.  (AR at 32)

DCPS provided the parent with the address and phone number of both locations "so that the parent would have the opportunity to go out and visit each of the placements." (AR at 307-309) However, the parent chose not to visit either school because she only wanted her child to go to a private school. (AR at 309) "Basically the parent and advocate, they stated that they weren't in agreement with either of the placements, and that they wanted the child placed at Accotin[k], and there were—they also gave us a copy of an acceptance letter from Accontin[k]." (AR at 314) (*See also* AR at 320)

DCPS also attempted to convene another meeting before making a final placement decision, but was rebuffed by the parent. As testified to at the due process hearing, Ms. Phaedra Smith, the special education coordinator, "contacted Mom as well as [the] educational advocate, Ms. Pressley," and also attempted to contact plaintiff's counsel to set up another placement meeting. (AR at 322, 323) However, "another meeting wasn't held. At the time when I contacted Mom to see, you know, what she wanted to do in terms of the placement, that's when Mom told me the child wasn't going there. I told her that I would try to contact Ms. Presley, the educational advocate so that we could sit down and basically have another meeting and determine what we were going to do." (AR at 323) Because the parent did not cooperate, no subsequent placement meeting was held.

As set forth above, it can clearly be seen that the parent had the opportunity to fully participate in the development of an IEP for the student and in fact she proffered suggestions which were accepted by the team. It is also apparent that the parent fully participated in discussions concerning the type of placement that would be appropriate to

meet the student's educational needs.  The fact that the placement sought by the parent was not ultimately chosen, does not mean that she did not have the opportunity to participate in the decision making process.

### 2.  Defendants Selected an Appropriate Educational Placement for T.T.

38 D.C. Code §2501(c) provides that special education placements shall be made in the following order of priority provided that the placement is appropriate for the student:

> (1) DCPS schools or District of Columbia public charter schools;
> (2) Private or residential District of Columbia facilities; and
> (3) Facilities outside of the District of Columbia.

Thus, DCPS is required to consider a student's neighborhood school first, the next closest neighborhood school, and public citywide center programs, before seeking placement at a private school.  Here, DCPS determined that Hamilton was the closest public school that could meet the educational needs of the student and, accordingly, issued a Notice of Placement to that school.  (AR at 70)  No evidence has been submitted to dispute that Hamilton is an appropriate placement.

The U.S. Court of Appeals for the District of Columbia has held in *Jenkins v. Squillacote,* 935 F.2d 303, 305 (D.C. Cir. 1991), that if a public placement is appropriate, a school district need not consider a private placement, "even though a private school might be more appropriate or better able to serve the child."  Cited with approval in *Schoenbach v. District of Columbia,* 309 F. Supp. 2d 71 (D.D.C. 2004).  Here, DCPS presented the parent with a choice of two appropriate public placements but the parent refused to consider either one.

This case bears little resemblance to that cited by plaintiffs' counsel[7] regarding the inhibition of "meaningful participation by the parents."  (Pls' mot. at 7)  In *Briere*, the court concluded that the school district committed extensive procedural and substantive violations and that those violations constituted a denial of FAPE.  The procedural violations involved included: the school district writing incomplete IEPs, delaying IEP Team meetings for 23 months, not finalizing an IEP for a particular school year, failing to conduct supplemental evaluations, and failing to advise the parent the reasons her placement request was refused.  (948 F. Supp. at 1247, 1249, 1254, 1255)  By contrast here, the only allegation of a procedural violation is the claim that the Site Review Committee, not the MDT team, determined the student's placement.

In the instant case, there is no allegation that the student's IEP was late, inappropriate or incomplete.  In fact, the parent agreed with the MDT team that the student qualified for special education services under IDEA as an "emotionally disabled" student. (AR at 268)  When the parent suggested that the student needed a full time placement with crisis intervention and a psychologist on site, the team accepted her suggestion and incorporated it into the IEP, which was approved by the parent. (AR at 268, 71)  Further, the parent agreed that the setting of the provision of educational services should be out of general education.  (AR at 71)  The parent's only disagreement with the entire process is that her child was not placed in a private school at DCPS' expense.

While the parent claims that her preferred placement, Accotink, was not discussed, this is not accurate.  "Accotink was considered however DCPS has 2

---

[7] *Briere v. Fair Haven Grade Sch. Dist.,* 948 F. Supp. 1242 (VT. 1996)

appropriate placements that they are offering that can meet the student's needs." (AR at 71)

## CONCLUSION

DCPS complied with 34 CFR Sec. 300.552(a)(1) when it timely held an MDT meeting, on August 2, 2005, with a "group of persons, including the parent[], and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options…." At that meeting the team developed an IEP, with the parent's agreement, which called for a full-time out of general education placement. In order to determine where vacancies might exist in schools that could provide an appropriate education as specified by the IEP, the special education coordinator sent the necessary documents to the Site Review Committee. The Site Review Committee subsequently provided the special education coordinator with information about DCPS full-time therapeutic program as placement options, to be discussed by the MDT team at a reconvened meeting on August 25, 2005. On that date the parent and her advocate participated in the MDT/Placement meeting with the required MDT members who were knowledgeable about the child. The parent was offered an opportunity to visit both DCPS proposed placements, but refused. The parent had received an acceptance letter to the private placement of Accotink Academy prior to the meeting and stated that was the school she wanted her child to attend. While DCPS was aware of the parent's wishes, they had offered two appropriate placements, and thus correctly rejected the private placement.

For these reasons and those stated above, this Court should affirm the Hearing Officer's Decision and dismiss the Complaint.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General
for the District of Columbia

GEORGE  C. VALENTINE
Deputy Attorney General
Civil Litigation Division


/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Assistant Attorney General
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
E-mail – maria.merkowitz@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____  )
T. T.                            )
(a minor) by her mother          )
and next friend                  )
Norma E. Gales                   )
                                 )
           Plaintiffs,           )
                                 )
           v.                    )    Civil Action No. 06-207 (JDB)
                                 )
DISTRICT OF COLUMBIA et al.      )
                                 )
           Defendants.           )
_____  )
```

## STATEMENT OF MATERIAL FACTS THAT ARE DISPUTED

1.    Defendants dispute plaintiffs' material fact numbered one.  The decision on
the placement of T.T. was not outsourced to the DCPS Site Review
Committee. The DCPS Site Review Committee only determined the location
that would meet the student's needs and the site which was closest to her
home.  (AR at 317) record.  (AR. 1-295)

2.    Defendants dispute plaintiffs' material facts numbered 2-5.  These material
facts contain no reference to the administrative record and represent only the
attorney's arguments.

3.    Defendants dispute plaintiffs' material fact numbered 6.  The Site Review
Committee identified two public school locations that could meet the student's
educational needs.  (AR at 70)  DCPS offered the proposed placements of the
Hamilton Center and  Taft Center, complying with 38 D.C. Code §2501(c)

which mandates the placement of a child in an appropriate DC public school,

before placement in a private school.  DCPS believed that both schools were

appropriate and could meet the student's educational needs.  (AR at 70)

When the parent and advocate advised that they had not had an opportunity to

visit the programs, they were provided information about the programs, as

well as the phone number and address of each location so they could go out

and visit each of the proposed placements.  (AR at 307-309)

4.      Defendants dispute plaintiffs' material fact numbered 7.  This material fact

contains no reference to the administrative record and represents only the

attorney's arguments.

5.      Defendants dispute plaintiffs' material fact numbered 8.  At the August 25,

2005 meeting a decision was made to issue a Notice of Placement to Hamilton

Center, the school closest to the student's home.  (AR at 321)  No other

meeting of the MDT was held because the parent was uncooperative.  (AR at

322)

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General
for the District of Columbia

GEORGE  C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Assistant Attorney General
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
E-mail – maria.merkowitz@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
T. T.                                     )
(a minor) by her mother                   )
and next friend                           )
Norma E. Gales                            )
                                          )
          Plaintiffs,                     )
                                          )
          v.                              )   Civil Action No. 06-207 (JDB)
                                          )
DISTRICT OF COLUMBIA *et al.*             )
                                          )
          Defendants.                     )
_____

**<u>DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE</u>**

1.     On August 2, 2005, DCPS convened a multidisciplinary team ("MDT")

       meeting on behalf of the student, which consisted of the parent, a speech

       pathologist, school psychologist, general education teacher, IEP

       developer, an LEA/special coordinator, a social worker and the student's

       educational advocate.  (AR at 263).

2.     On that date the team developed an individualized educational plan

       ("IEP") for the student that called for 100% of the time not in a general

       education setting, and which required 32 hours a week of specialized

       instruction and related services.  (AR at 248, 262)

3.     The parent, who was present at the meeting, suggested that the student

       needed a full-time placement that has crisis intervention and a

psychologist and staff on site.  (AR at 268)  The MDT/IEP team agreed to this type of placement.  (AR at 268)

4.    The special education coordinator forwarded the student's IEP and current evaluations to the Site Review Committee for identification of an available placement that would meet the student's educational needs as set forth in her IEP.  (AR at 70)

5.    The Site Review Committee does not make placement decisions.  Its role is to determine a location that fits the criteria outlined in the IEP.  (AR at 327, 321)

6.     Once the Site Review Committee identifies potential locations those are then discussed by the MDT team.  (AR at 327)

7.    The Site Review Committee responded to the special education coordinator, naming two alternative available full-time placements for students with emotional disturbance—Taft Center and Hamilton Center. (AR at 70)

8.    These locations were considered by DCPS personnel and found to be appropriate placements that could meet the child's educational needs. (AR at 70, 306, 312)

9.    On August 25, 2005, the MDT team, comprised of the parent, her advocate, the special education coordinator, a school psychologist, speech therapist, social worker and special education teacher, reconvened to discuss and determine placement for the student.   (AR at 69)

10.    DCPS offered the parent both the Hamilton Center and the Taft Center as two appropriate placements.  (AR at 306)

11.    The parent was informed that both schools could meet the student's needs. (AR at 312)

12.    DCPS also provided the parent with information on the two programs and gave the parent the phone number and address of each proposed placement so that the parent could visit both and determine which of the two she would prefer.  (AR at 307-309)

13.    The parent informed Ms. Smith, the special education coordinator, that she was not going to visit either of the two DCPS proposed sites and that her child was not going to attend either program. (AR at 309, 314, 318)

14.    The parent only wanted the student to attend Accotink Academy, a private school, where the student had already been accepted.  (AR at 314)

15.    The MDT/IEP team was aware of the parent's input with respect to the location of services.  (AR at 307)

16.    DCPS attempted to convene another placement meeting before making a final placement decision, but was rebuffed by the parent. (AR at 322, 323)

17.    The special education coordinator contacted the parent, her advocate and her attorney in an attempt to set up the meeting.  (AR at 322, 323)

18.    Another placement meeting was not held because of lack of cooperation by the parent. (AR at 323)

19.    DCPS determined that Hamilton was the closest public school that could meet the educational needs of the student and issued a Notice of

Placement to that school.  (AR at 70, 319)  No evidence has been

submitted to dispute that Hamilton is an appropriate placement.  (AR 1-

355)

                        Respectfully submitted,

                        EUGENE A. ADAMS
                        Interim Attorney General
                        for the District of Columbia

                        GEORGE  C. VALENTINE
                        Deputy Attorney General
                        Civil Litigation Division


                        /s/ Edward P. Taptich
                        EDWARD P. TAPTICH [012914]
                        Chief, Equity, Section 2

                        /s/ Maria L. Merkowitz
                        MARIA L. MERKOWITZ [312967]
                        Senior Assistant Attorney General
                        441 4th Street, N.W.
                        Sixth Floor North
                        Washington, DC 20001
                        (202) 442-9842
                        E-mail – maria.merkowitz@dc.gov